<div style="text-align:center">

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO**

</div>

**DAMON McCORMICK**                                                                **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO. 4:16CV-P17-JHM**

**NURSE KENDRA** *et al*.                                          **DEFENDANTS**

<div style="text-align:center">

**MEMORANDUM OPINION AND ORDER**

</div>

Plaintiff Damon McCormick, a prisoner proceeding *in forma pauperis*, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will dismiss the official capacity claims and allow Plaintiff to amend his complaint to name Defendants in their individual capacities.

<div style="text-align:center">

**I. SUMMARY OF CLAIMS**

</div>

Plaintiff names five Defendants in this action. He identifies the Defendants as follows: (1) Nurse Kendra, a Supervisor employed by Southern Health Partners (SHP);[1] (2) Nurse Miles, an employee of SHP; (3) Colonel Gibson, an employee of the Henderson County Detention Center (HCDC); (4) Nurse Lea, an employee of SHP; and (5) Nurse Henrietta, an employee of SHP. Plaintiff sues Defendants in only their official capacities and seeks monetary and punitive damages.

Plaintiff is incarcerated at the HCDC where the alleged events about which he complains occurred. According to Plaintiff, he has been confined to a wheelchair for over two years. Plaintiff complains that on or about January 17th, he was placed in a detox cell, which was not

---

[1] According to SHP's website, http://www.southernhealthpartners.com/about, SHP "is a leading provider of affordable medical, dental, and mental health services to inmates in county and city jail facilities."

handicap accessible, by Defendant Kendra "even though [he] gave a clean urine sample to Medical Dept." Plaintiff states that Defendant Kendra took away his wheelchair, and he was required to "scoot on [his] behind across the floor to get [his] meals and medicine." According to Plaintiff, there was no bunk in his cell. Plaintiff states that all of the jail medical staff, with the exception of Defendant Miles, would come into his cell to give him his meals and medication.

      According to Plaintiff, on or about "the 19th or 20th or so during pill call [Defendant] Miles told [him he] would have to stand up on [his] feet or [he] would not receive [his] medicine." When Plaintiff informed Defendant Miles that he could not, Plaintiff states that Defendant Miles left without giving him his medication. Plaintiff asserts that he takes medication for high blood pressure and seizures. Plaintiff states that at this point he had missed several days of his medication because of Defendant Miles, so when Defendant Miles returned to the cell, Plaintiff attempted to stand up. According to Plaintiff, when he did so, his "right knee snapped, popped real loud and buckled." Plaintiff states that he was screaming in pain, but Defendant Miles refused to give him his medication and left. Plaintiff states that 12 hours later Defendant Miles returned, refused to give Plaintiff his medication because he would not stand, and refused to examine Plaintiff's knee even though Plaintiff informed Defendant Miles that he thought he had broken something in his knee. Plaintiff states that whenever Defendant Miles works, he and Correctional Officer Payne laugh and tell Plaintiff that "they won this wheelchair dispute and that he was going to get [Plaintiff's] wheelchair taken for good very soon."

      Plaintiff states that the medical and jail staff know of his knee problems and that Plaintiff has "been scheduled for some time to have 2 total knee replacements by Doctor Reid Wilson." According to Plaintiff, Defendant Lea, despite knowledge of Plaintiff's knee problems, "keeps

telling [Defendant] Gibson there is nothing wrong with [Plaintiff's] knees." Plaintiff states that Defendant Lea 'is constantly denying the use of this wheelchair and after time giving it back. And medical will not approve of [him] using [his] personal wheel chair. Wich [his] Doctor prescribed and . . . [his] insurance paid for, because of [his] knee problems."

Plaintiff states that he also suffers from seizures and that he is supposed to take two different medications for his seizures. Plaintiff asserts that Defendants Kendra and Lea "are only giving [him] one of them." According to Plaintiff, he has had seven seizures since arriving at the HCDC. Still, according to Plaintiff, no one will examine him or treat him for the seizures, and Defendants Kendra and Lea refuse to get his medical records about his seizures or give him his seizure medication.

On or about January 27th, according to Plaintiff, he was placed in a different cell by Defendant Kendra and his wheelchair was returned to him. Plaintiff states that the new cell is not handicap accessible. Plaintiff states that he "asked Col. Gibson and her Deputies repeatedly and medical staff repeatedly" for about a week for a shower chair. Plaintiff states that they all denied his request. So, Plaintiff states, "[a]fter a few days [he] had to take a shower without one." According to Plaintiff, while he was showering he had a seizure. Plaintiff states that he "woke up in the shower floor with [his] left knee throbbing real bad, this being Feb 2nd." He subsequently got the attention of "2 different Deputies and a nurse" who all informed him "to put in a sick call slip cause it was not an emergency." Plaintiff states that "[a]while later [Defendant] Gibson came to the panhole and [Plaintiff] started hollering at her about [his] injury." According to Plaintiff, this resulted in Defendant Gibson putting him in isolation "and [Defendant] Lea refused to take a look at [his] knee or treat [him] for [his] seizures. No medical attention at all."

Plaintiff states that he also suffers from "acid reflux and erosion of the esophagus." He states that he has been treated for this condition in the past, but presently the HCDC medical staff, "at the behest of [Defendant] Kendra will not treat [him] for it anymore. Regardless of how much pain [he] is in."

According to Plaintiff, on or about February 12th, he had "2 seizures back to back injuring [his] right shoulder pretty bad in the first one. [Defendant] Henrietta refused to examine [his] shoulder and took [his] wheelchair from [him] in a punitive manner."

Further, Plaintiff states that he is allergic to polyester, yet "[j]ail uniforms are 1.7% polyesther." Plaintiff states that he has "open wounds and scabs all over [his] body from scratching." According to Plaintiff, he has received treatment for this in the past, but now the medical department, "namely" Defendants Lea and Kendra refuse to treat him for this condition.

Finally, Plaintiff alleges that Defendants Kendra, Lea, and Miles have "taken [his] wheelchair and given it back many times thinking its funny and making light of [his] disability."

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 90 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must

4

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the district court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

Plaintiff's claims pursuant to 42 U.S.C. § 1983 are brought against each Defendant only in his or her official capacity. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Suing the HCDC employee, Defendant Gibson, in her official capacity is the equivalent of suing her employer, Henderson County. *See Lambert v. Hartman*, 517 F.3d 433, 439-40

(6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (advising that since the county police department is not an entity which may be sued, the county is the proper party); *Bradford v. Hammond*, No. Civ.A.3:05CVP459-H, 2005 WL 2739154, at *2 (W.D. Ky. Oct. 21, 2005) (construing a claim against Louisville Metro Corrections as one brought against Louisville/Jefferson County Metro Government).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). In addition to suing a HCDC employee, Plaintiff has sued four employees of SHP. The same municipal-liability analysis applies to § 1983 claims against a private corporation. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("'*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.'") (quoting *Harvey v. Harvey*, 949 F. 2d 1127, 1129 (11th Cir. 1992). Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Id.* at 817; *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights."). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282,

Case 4:16-cv-00017-JHM-HBB Document 8 Filed 06/21/16 Page 7 of 9 PageID #: 42

286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, "a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted))

In the instant case, Plaintiff has not alleged that a municipal policy or custom caused his alleged harm. As nothing in the complaint demonstrates any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Henderson County, the complaint fails as to Defendant Gibson. Plaintiff has also not alleged that any policy or custom of SHP caused his alleged harm. Further, nothing in the complaint demonstrates any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by SHP. Thus, the complaint fails as to the remaining four Defendants who are all employed by SHP. Since the

7

complaint fails to establish a basis of liability against the municipality or against SHP, it fails to state a cognizable § 1983 claim.

Accordingly, Plaintiff's claims brought under 42 U.S.C. § 1983 against Defendants in their official capacities will be dismissed for failure to state a claim upon which relief may be granted.

While Plaintiff alleges that his rights have been violated, he fails to name any Defendant in their individual capacity. "[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act]." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). The Court will allow Plaintiff to amend his claims to name Defendants in their individual capacities.

## IV. ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims against Defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **within 30 days** of entry of this Order Plaintiff may amend his complaint to name the Defendants in their individual capacities, if he so chooses. The Clerk of Court is **DIRECTED** to send to Plaintiff a 42 U.S.C. § 1983 complaint form with this case number and the word "AMENDED" affixed thereto for Plaintiff's use should he wish to amend the complaint. The Amended Complaint will supersede and replace the original complaint. Thus, Plaintiff should include all of his claims against each Defendant in the amended complaint. Once received, the Court will perform initial review of the amended complaint.

**Should Plaintiff file no amended complaint within 30 days, the Court will enter a final Order dismissing the entire action for the reasons stated herein**.

Date: June 20, 2016

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
4414.003