UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

DAMON McCORMICK                                                                                                    PLAINTIFF

v.                                                                                      CIVIL ACTION NO. 4:16CV-P17-JHM

NURSE KENDRA *et al*.                                                                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Damon McCormick, a prisoner proceeding *in forma pauperis*, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1).  The Court performed initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), and dismissed the claims against Defendants in their official capacities and allowed Plaintiff 30 days to amend the complaint to name Defendants in their individual capacities, if he so chose (DN 8).  Thereafter, on July 5, 2016, Plaintiff filed an amended complaint (first amended complaint) (DN 9).  In the first amended complaint, he names the same five Defendants that he named in the original complaint, sues them in their individual capacities, and essentially restates the same facts alleged in his original complaint.

On September 26, 2016, Plaintiff filed a motion for leave to file an amended complaint (second amended complaint) (DN 14).  In the motion, Plaintiff seeks to add two new Defendants to this action, Henderson County Detention Center (HCDC) and Southern Health Partners (SHP).[1]  Therein he sets forth claims against these two Defendants.  Upon consideration,

Plaintiff's motion to file an amended complaint (DN 14) is **GRANTED**.

---

[1] According to SHP's website, http://www.southernhealthpartners.com/about, SHP is a private corporation that is "a leading provider of affordable medical, dental, and mental health services to inmates in county and city jail facilities."

The **Clerk of Court** is **DIRECTED** to add HCDC and SHP as Defendants to the docket of this case.

The first amended complaint (DN 9) and the second amended complaint (DN 14) are presently before the Court for initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601. For the reasons that follow, the Court will dismiss the following claims: (1) the individual-capacity claims against Defendants HCDC and SHP; (2) all of the official-capacity claims against Defendant HCDC, with the exception of the polyester-uniform claim; (3) all of the official-capacity claims against Defendant SHP; and (4) the individual-capacity claim against Defendant Miles for verbal harassment. The remaining claims will be allowed to proceed.

## I. SUMMARY OF CLAIMS

Plaintiff names seven Defendants in the two amended complaints. He identifies the Defendants as follows: (1) Nurse Kendra, a nurse employed by SHP; (2) Nurse Miles, a nurse employed by SHP; (3) Colonel Gibson, an employee of the HCDC; (4) Nurse Lea, a nurse employed by SHP; (5) Nurse Henrietta, a nurse employed by SHP; (6) HCDC; and (7) SHP. Plaintiff states that he sues Defendants HCDC and SHP in their individual and official capacities. He sues the remaining Defendants in only their individual capacities. As relief, Plaintiff seeks monetary and punitive damages.

Plaintiff is incarcerated at the HCDC where the alleged events about which he complains occurred. According to the allegations contained in the first amended complaint, Plaintiff has been confined to a wheelchair for over two years. Plaintiff complains that on or about January 17th,[2] Defendant Kendra placed him in a cell for detox, which was not handicap accessible "even though [he] provided a clean urine sample to the Medical Dept." Plaintiff states that Defendant

---
[2] Plaintiff fails to specify a year.

Kendra took away his wheelchair, and he was required to "scoot on [his] behind across the floor to get [his] meals and medicine." According to Plaintiff, there was no bunk in that cell. Plaintiff states that all of the jail medical staff, with the exception of Defendant Miles, would come into his cell to give him his meals and medication.

According to Plaintiff, on or about "January 19th or 20th during pill call [Defendant] Miles told [him he] would have to stand up on [his] feet or [he] would not receive [his] medicine." When Plaintiff informed Defendant Miles that he could not stand, Plaintiff states that Defendant Miles left without giving him his medication. Plaintiff asserts that he takes medication for high blood pressure and seizures. Plaintiff states that at this point he had missed several days of his medication because of Defendant Miles, so when Defendant Miles returned to the cell, Plaintiff attempted to stand up. According to Plaintiff, when he did so, his "right knee snapped, popped real loud and buckled." Plaintiff states that he was screaming in pain, but Defendant Miles refused to give him his medication and left. Plaintiff states that 12 hours later Defendant Miles returned, refused to give Plaintiff his medication because he would not stand, and refused to examine Plaintiff's knee even though Plaintiff informed Defendant Miles that he thought he had broken something in his knee. Plaintiff states that whenever Defendant Miles works, he and Correctional Officer Payne laugh and tell Plaintiff that "they won this wheelchair dispute and that he was going to get [Plaintiff's] chair taken for good very soon."

Plaintiff states that the medical and jail staff know of his knee problems and that he has "been scheduled for some time to have 2 total knee replacements by Doctor Reid Wilson." According to Plaintiff, Defendant Lea, despite knowledge of Plaintiff's knee problems, "keeps telling [Defendant] Gibson there is nothing wrong with [Plaintiff's] knees." Plaintiff states that Defendant Lea 'constantly is denying [him] use of this wheelchair and after a period of time

3

giving it back. And medical will not approve of [him] using [his] personal wheelchair. Wich [his] Doctor prescribed and [his] insurance paid for, because of [his] knee problems."

Plaintiff states that he suffers from seizures and that he is supposed to take two different medications for his seizures. Plaintiff asserts that Defendants Kendra and Lea "are only giving [him] one of them." According to Plaintiff, he has had seven seizures since arriving at the HCDC. Still, according to Plaintiff, no one will examine him or treat him for the seizures, and Defendants Kendra and Lea refuse to get his medical records about his seizures or give him his seizure medication.

On or about January 27th, according to Plaintiff, he was placed in a different cell, cell #524, by Defendant Kendra, and his wheelchair was returned to him. Plaintiff states that the new cell is not handicap accessible. Plaintiff states that he "asked Col. Gibson and her Deputies repeatedly and Medical Staff repeatedly" for about a week for a shower chair. Plaintiff states that they all denied his request. So, Plaintiff states, "[a]fter a few days [he] had to take a shower without one . . . holding onto the shower head with one hand." According to Plaintiff, while he was showering he had a seizure. Plaintiff states that he "woke up in the shower floor with [his] left knee throbbing real bad, this being Feb 2nd." According to Plaintiff, he subsequently got the attention of "2 different deputies and a nurse" who all informed him "to put in a sick call slip cause it was not an emergency." Plaintiff states that "[a]while later [Defendant] Gibson came to the panhole and [Plaintiff] started hollering at her about [his] injury." According to Plaintiff, this resulted in Defendant Gibson putting him in isolation "and [Defendant] Lea refused to take a look at [his] knee or treat [him] for [his] seizures. No medical attention at all."

Plaintiff states that he also suffers from "acid reflux and erosion of the esophagus." He states that he has been treated for this condition in the past, but presently the jail's "Medical

Dept., . . . at behest of [Defendant] Kendra will not treat [him] for it anymore.  Regardless of how much pain [he is] in."

According to Plaintiff, on or about February 12th, he had "2 seizures back to back injuring [his] right shoulder pretty bad in the first one.  [Defendant] Henrietta refused to examine [his] shoulder and took [his] wheelchair from [him].  In a punitive manner."  According to Plaintiff, Defendant Henrietta told him that this would stop the seizures.

Further, Plaintiff states that he is allergic to polyester, yet "[j]ail uniforms are 67% polyester."  Plaintiff states that he has "open wounds and scabs all over [his] body from scratching."  According to Plaintiff, he has received treatment for this in the past, but the medical department, "namely [Defendants] Lea and Kendra refuse to treat it now."

According to Plaintiff, Defendants Kendra, Lea, Miles and Henrietta have "taken [his] wheelchair and given it back many times; thinking its funny and making light of [his] disability."

In the second amended complaint, as to HCDC, Plaintiff states that "Jail officials must meet the needs of prisoners with disabilities and furnish the assistance that they require in order to live a minimally decent life in Jail or prison."  Plaintiff states that on January 17th he was in a cell "which was not handicap accessible."  He further states that guards took away his wheelchair and made him "scoot on his behind across the floor for many days to get his meals and medicine."  He states that there was no bunk in the cell.  Plaintiff states again the alleged incident in which Defendant Miles made him stand up to get his medication and Plaintiff's knee buckled causing Plaintiff to fall to the floor.  Plaintiff states that none of the cells he was placed in at HCDC was handicap accessible, the shower was not accessible, and he was denied "other handicaps needs."  He states that his wheelchair was taken away "and given back like a game and thinking its funny and making fun of his disability."

5

As to SHP, Plaintiff states that it "is the medical provider for" HCDC. He sets forth some law about the "deliberate indifference to serious medical needs of prisoners." Further, Plaintiff states that on or about January 19th or 20th, he "was order by Guard to stand up and his right knee snapped, popped real loud and buckled to the floor." Plaintiff states that medical refused "any treatment at all." Plaintiff states that he suffers from seizures and needs two medications, but the nurse would only give him one medication. Plaintiff states that medical refused to "order a showering chair or any handicap needs." Plaintiff further states that he has "open wounds and scabs all over his body from scratching, [but] medical refuses to treat him for these conditions." Plaintiff concludes, "Medical was making fun at plaintiff disability and would not help him at all."

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 90 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the district court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. LEGAL ANALYSIS

#### A. Claims Against HCDC and SHP

##### 1. Individual-Capacity Claims

Individual-capacity suits, also known as personal-capacity suits, "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The individual-capacity designation is not applicable to a Defendant which is not an individual since no personal liability is involved.

Accordingly, the individual-capacity claims against HCDC and SHP will be dismissed for failure to state a claim.

### *2. Official-Capacity Claims*

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). HCDC is not a "person" subject to suit; thus, suing Defendant HCDC is the equivalent of suing Henderson County. *See Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (finding that the jail "is not an entity subject to suit under § 1983"); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (advising that since the county police department is not an entity which may be sued, the county is the proper party); *Bradford v. Hammond*, No. Civ.A.3:05CVP459-H, 2005 WL 2739154, at *2 (W.D. Ky. Oct. 21, 2005) (construing a claim against Louisville Metro Corrections as one brought against Louisville/Jefferson County Metro Government).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The same municipal-liability analysis applies to § 1983 claims against a private corporation like Defendant SHP. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("'*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.'") (quoting *Harvey v. Harvey*, 949 F. 2d 1127, 1129 (11th Cir. 1992)). Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Id.* at 817; *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation

of [plaintiff's] Eighth Amendment rights."). The Court will first address the second issue, *i.e.*, whether Defendants are responsible for the alleged constitutional violations.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, "a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, with the exception of the claim against HCDC regarding the wearing of a polyester uniform to which he is allergic, Plaintiff has not alleged that a municipal policy or custom of Henderson County or a policy or custom of SHP caused any of his alleged harm.

With the exception of the polyester-uniform claim, nothing in the complaint demonstrates any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by either Henderson County or SHP.

Accordingly, the claim regarding the wearing of a polyester uniform will proceed against Defendant HCDC. The remaining official-capacity claims against HCDC will be dismissed for failure to state a claim upon which relief may be granted. Further, all of the official-capacity claims against SHP will be dismissed. There being no remaining claims against SHP, it will be dismissed from this action.

### B. Claims Against the Individual Defendants

#### 1. Handicap Cell

Plaintiff asserts that he is handicapped and confined to a wheelchair due to a lack of an ability to ambulate. He states that he was denied a handicap cell. The Court will construe this claim as being brought under the Eighth Amendment. Plaintiff brings this claim against Defendants Kendra and Gibson in their individual capacities.

Upon consideration, the Court will allow this Eighth Amendment claim for failure to provide Plaintiff with a handicap cell to proceed against Defendants Kendra and Gibson in their individual capacities.

#### 2. Wheelchair

Plaintiff asserts that he is disabled and needs a wheelchair. He states that on occasion he was denied a wheelchair sometimes apparently sadistically. The Court will construe this claim as being brought under the Eighth Amendment. Plaintiff brings this claim against Defendants Kendra, Miles, Lea, Gibson, and Henrietta in their individual capacities.

Upon consideration, the Court will allow this Eighth Amendment claim for failure to provide Plaintiff with a wheelchair to proceed against Defendants Kendra, Miles, Lea, Gibson, and Henrietta in their individual capacities.

### 3. Shower Chair

Plaintiff asserts that despite his handicap, he was denied a shower chair when he was moved to cell #524. The Court will construe this claim as being brought under the Eighth Amendment. Plaintiff brings this claim against Defendants Gibson in her individual capacity.

Upon consideration, the Court will allow this Eighth Amendment claim for failure to provide Plaintiff with a shower chair to proceed against Defendant Gibson in her individual capacity.

### 4. Medical Treatment

#### a. Knee Pain

Plaintiff states that he injured his knee of two separate occasions. The first injury occurred on January 19th or 20th when Plaintiff states that he attempted to walk to get his medication because Defendant Miles refused to bring Plaintiff's medication to him. Plaintiff states that his "right knee snapped, popped real loud and buckled." Plaintiff alleges that even though he was screaming in paint, Defendant Miles refused to treat him.

The second knee injury about which Plaintiff complains occurred on February 2nd. As to this event, Plaintiff states that he had a seizure in the shower and "woke up in the shower floor with [his] left knee throbbing real bad." He asserts that Defendants Lea and Gibson denied him medical treatment for this injury. The Court construes this claim as being brought under the Eighth Amendment.

11

Upon consideration, the Court will allow these Eighth Amendment claims for failure to treat Plaintiff's knee injuries to proceed against Defendants Miles, Lea, and Gibson in their individual capacities.

### b. *Seizures*

Plaintiff states that he suffers from seizures for which he must take two medications. He claims that was denied one of these medications by Defendants Kendra and Lea. He further states that he has had seizures which have resulted in injury because of this failure to provide him with his seizure medications. He brings these claims against Defendants Kendra and Lea in their individual capacities. The Court construes this claim as being brought under the Eighth Amendment.

Upon consideration, the Court will allow this Eighth Amendment claim for failure to treat Plaintiff's seizures to proceed against Defendants Kendra and Lea in their individual capacities.

### c. *Open Wounds and Itching*

Plaintiff contends that as a result of having to wear a uniform which contains polyester, a fabric to which he has an allergy, he has open wounds and scabs from scratching. He states that he has received treatment for this in the past, but that now Defendants Kendra and Lea refuse to treat him for this condition. The Court construes this claim as being brought under the Eighth Amendment.

Upon consideration, the Court will allow this Eighth Amendment claim for failure to treat Plaintiff's open wounds and itching to proceed against Defendants Kendra and Lea in their individual capacities.

### d. *Acid Reflux*

Plaintiff states that he suffers from acid reflux which is painful and causes constant burning in his stomach and throat. He states that he received treatment for this in the past, but that now Defendant Kendra refuses to treat him for this condition. The Court construes this claim as being brought under the Eighth Amendment.

Upon consideration, the Court will allow this Eighth Amendment claim for failure to treat Plaintiff's acid reflux to proceed against Defendant Kendra in her individual capacity.

### 5. *Verbal Harassment*

Plaintiff states that Defendant Miles makes fun of his disability. Threats and verbal harassment do not give rise to a constitutional violation. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (acknowledging that "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim.").

Accordingly, Plaintiff's claim that Defendant Miles made fun of his disability will be dismissed for failure to state a claim.

### IV. ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows: (1) the individual-capacity claims against Defendants HCDC and SHP are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a

claim upon which relief may be granted; (2) all of the official-capacity claims against Defendant HCDC, with the exception of the polyester-uniform claim, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (3) all of the official-capacity claims against Defendant SHP are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and (4) the individual-capacity claim against Defendant Miles for verbal harassment is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **SHP** is **DISMISSED** from this action. The **Clerk of Court** is **DIRECTED** to remove SHP as a Defendant from the docket of this case.

**IT IS FURTHER ORDERED** that the following claims shall proceed: (1) the Eighth Amendment claim against Defendants Kendra and Gibson in their individual capacities for failure to provide Plaintiff with a handicap cell; (2) the Eighth Amendment claim against Defendants Kendra, Miles, Lea, Gibson, and Henrietta in their individual capacities for failure to provide Plaintiff with a wheelchair; (3) the Eighth Amendment claim against Defendant Gibson in her individual capacity for failure to provide Plaintiff with a shower chair; (4) the Eighth Amendment claims for failure to treat Plaintiff's knee injuries against Defendants Miles, Lea, and Gibson in their individual capacities; (5) the Eighth Amendment claim against Defendants Kendra and Lea in their individual capacities for failure to treat Plaintiff's seizures; (6) the Eighth Amendment claim against Defendants Kendra and Lea in their individual capacities for failure to treat Plaintiff's open wounds and itching; (7) the Eighth Amendment claim against Defendant Kendra in her individual capacity for failure to treat Plaintiff's reflux; and (8) the

14

Eighth Amendment claim against Defendant HCDC regarding the failure to provide Plaintiff with a non-polyester uniform.

The Court will enter a separate Scheduling Order directing service and governing the development of the continuing claims. In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date: October 5, 2016

*[signature]*

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
4414.003