# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

DAMON McCORMICK                                                           PLAINTIFF

v.                                            CIVIL ACTION NO. 4:16CV-P17-JHM

NURSE KENDRA *et al*.                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court for initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), is pretrial detainee Plaintiff Damon McCormick's third *pro se* amended complaint (DN 146). For the reasons that follow, the Court will dismiss the following claims: (1) the claims under Title II of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) against Defendants in their individual capacities; (2) the claims under Title III of the ADA; (3) the claims against Defendants ARC General Contractors (ARC) and Fosse & Associates; and (4) the jail construction claim against Henderson County Detention Center (HCDC). All other claims will be allowed to proceed.

## I. SUMMARY OF CLAIMS

Plaintiff names twelve Defendants in his third amended complaint. He identifies the Defendants as follows: (1) HCDC; (2) Southern Health Partners (SHP); (3) Kendra Robinson, a "MTA for SHP"; (4) Colonel Gibson, the Chief Deputy at HCDC; (5) Deputy Wiess, a Henderson County Sheriff's Deputy; (6) Lt. Buckman, a supervisor at HCDC; (7) Deputy Parrish, a Deputy at HCDC; (8) Dr. Davis, a physician for SHP; (9) Ron Herrington, the Jailer at HCDC; (10) Major Payne, a supervisor at HCDC; (11) Fosse & Associates, a general contractor; and (12) ARC. In this third amended complaint, Plaintiff asserts claims under Titles II and III of

the ADA, Section 504 of the RA, and the Eighth and Fourteenth Amendments. As relief, Plaintiff seeks monetary damages.

Preliminarily, Plaintiff states that he is a handicapped individual. He states that he is "wheelchair bound, legally Blind and suffers from multiple psychiatric disorders including Bipolar disorder." He contends that he is a protected individual under the ADA and the RA. Further, Plaintiff asserts that HCDC houses federal inmates and operates with federal funds and that federal funds were used in the building of HCDC.

### A. Inadequate Medical Device (Wheelchair)

Plaintiff asserts that it is the policy of HCDC and SHP to loan out inadequate wheelchairs rather than buy new ones in order to save money. Plaintiff states that because of this policy, he was given a wheelchair that had a broken arm and was too small for him. He states that since September 30, 2016, he has "been made to use a small size wheelchair." Plaintiff states that on November 14, 2016, Defendant Davis told Plaintiff that he knew the wheelchair was too small for Plaintiff, but that SHP would not buy him another wheelchair. According to Plaintiff, in attempting to get from his bed to the wheelchair on November 17, 2016, the broken arm "gave out," the "entire chair flipped over," and Plaintiff injured himself.

Plaintiff states that on January 6, 2017, he arrived back at HCDC and was given the same broken wheelchair by Defendant Wiess. Plaintiff states that Defendant Wiess informed Plaintiff that it was the only available wheelchair at the time. According to Plaintiff, once inside the jail, he informed Defendant Buckman about the broken chair. Plaintiff states that Defendant Buckman told him that Defendant Robinson had said Plaintiff was to use that chair and "according to [HCDC] policy he could not override [Defendant Robinson] and make her bring [Plaintiff] a more adequate chair." Plaintiff states that while getting booked that day, Defendant

Parrish told him that it was HCDC policy that all inmates had to stand to get patted down. When Plaintiff attempted to stand, he states that the arm of the wheelchair "gave out again and the whole chair flipped over along with . . . Plaintiff injuring plaintiffs back and shoulder."

Based on these allegations, Plaintiff asserts claims against Defendants HCDC, SHP, Gibson, Robinson, Wiess, Buckman, Parrish, and Davis in their official capacities under Titles II and II of the ADA, Section 504 of the RA, the Eighth Amendment, and the Fourteenth Amendment. He further asserts claims against Defendants Gibson, Robinson, Wiess, Buckman, Parrish, and Davis in their individual capacities under the Eighth and Fourteenth Amendments.

### B. Jail Construction

Plaintiff asserts that HCDC has no accessible bathroom facilities, toilets, sinks, mirrors, showers, cells, or tables "in the entire Jail." Plaintiff states that HCDC was built after the implementation of the ADA and was "required under the New Construction Clause to meet all ADA accessibility requirements as set forth in the ADA and Section 504 of the [RA]." Plaintiff states that HCDC was built in 1996 by Defendant ARC and the 500 Hall was built in 2004 by Defendant Fosse & Associates. Plaintiff states that the HCDC has "0% accessibility in a Jail that holds 700 Federal, State and County Inmates." Plaintiff asserts that Defendants HCDC, ARC, and Fosse & Associates did not comply with ADA design and construction standards, and in failing to do so, discriminated against Plaintiff causing him undue hardship and injury and denying him "program accessibility." Plaintiff states that it is the responsibility of these Defendants to ensure that Plaintiff can enjoy his rights under the ADA and RA.

As to this claim, Plaintiff sues Defendants HCDC, ARC, and Fosse & Associates under Titles II and III of the ADA, Section 504 of the RA, the Eighth Amendment, and the Fourteenth Amendment.

### C. Accessible Transportation

Plaintiff states that HCDC has no accessible transportation. He states that when he is transported places he must climb up in a van with the assistance of numerous deputies. He states that this is painful, shows a disregard for Plaintiff's safety and rights, and is discriminatory toward Plaintiff. Plaintiff asserts that it is Defendant Herrington and Gibson's duty to see that Plaintiff is not discriminated against while being transported.

As to this claim, Plaintiff sues Defendants HCDC, Gibson, and Herrington in their official capacities under Titles II and III of the ADA, Section 504 of the RA, the Eighth Amendment, and the Fourteenth Amendment. He sues Defendants Gibson and Herrington in their individual capacities under the Eighth and Fourteenth Amendments.

### D. Medical Cells

According to Plaintiff, on September 30, 2016, when he arrived at HCDC, Defendants Robinson and Gibson assigned him to "Medical Cell status due to his disability." Plaintiff states that it is HCDC's policy to house disabled inmates in medical cells and that none of the medical cells are ADA accessible. According to Plaintiff, in doing so, he did not have "unrestricted access to toilet facilities showers, Living area Tables, sinks and mirrors." Plaintiff contends that it is the duty of Defendants Robinson and Gibson to see that the disabled in the medical cells are not discriminated against and that they "receive unrestricted access to all services provided by HCDC." Plaintiff asserts that he was injured because he did not have unrestricted access to HCDC services.

As to this claim, Plaintiff sues Defendants Robinson and Gibson in their official capacities under Titles II and III of the ADA, Section 504 of the RA, the Eighth Amendment,

4

and the Fourteenth Amendment. He also sues Defendants Robinson and Gibson in their individual capacities under the Eighth and Fourteenth Amendments.

### E. Retaliation and Coercion

Plaintiff states that on October 27, 2016, Defendants Gibson and Herrington placed Plaintiff in isolation for the rest of his stay at HCDC. According to Plaintiff, Defendant Gibson told him that "by assisting others in the Medical cell to file ADA Complaints that he was insighting a riot and for that plaintiff was placed in isolation where he remains to this day." Plaintiff states that individuals who exercise their rights under the ADA or assist others in exercising their rights are protected from retaliation. Plaintiff asserts that Defendants Gibson and Herrington retaliated against him by putting him in isolation for "assisting others in their (ADA) complaints and thereby interfering with the exercise of those rights by separating Plaintiff from those inmates."

As to this claim, Plaintiff sues Defendants Gibson and Herrington in their official capacities under Title II of the ADA, Section 504 of the RA, the Eighth Amendment, and the Fourteenth Amendment. He also sues Defendants Gibson and Herrington in their individual capacities under the Eighth and Fourteenth Amendments.

### F. Refusing Plaintiff a Shower

According to Plaintiff, he suffers from a seizure disorder. He states that on two occasions, he urinated on himself while having a seizure. Plaintiff states that on both occasions this happened early in the day. However, Plaintiff asserts that because of HCDC isolation policy which states that the third shift gives inmates their showers, Plaintiff was made to wait for 12 hours before he was allowed to shower. According to Plaintiff, no exception was made to the policy for Plaintiff's disability. Plaintiff states that it was Defendant Parrish that refused him a

shower on the first occasion and Defendant Buckman who refused him a shower on the second occasion. Plaintiff states that this caused him undue emotional stress and hardship.

As to this claim, Plaintiff sues Defendants Parrish and Buckman in their official capacities under Title II of the ADA, Section 504 of the RA, the Eighth Amendment, and the Fourteenth Amendment. He also sues Defendants Parrish and Buckman in their individual capacities under the Eighth and Fourteenth Amendments.

### G. Denying Plaintiff Access to Food Services

On October 19, 2016, according to Plaintiff, he was housed in medical cell #525 when Defendants Gibson and Herrington had Plaintiff's wheelchair removed for two days. During these two days, Defendant Payne instructed the deputies "not to give [Plaintiff his] food trays unless [he] came to the panhole to retrieve them." Plaintiff states that the deputies were instructed not to let anyone bring Plaintiff's tray to him. Plaintiff states that Defendant Robinson notified SHP employees that Plaintiff was not to get his meal tray or medications unless he ambulated to get them. Plaintiff states that he is unable to ambulate and that these Defendants failed to accommodate his disability when they took away his wheelchair.

As to this claim, Plaintiff sues Defendants Herrington, Gibson, Payne, and Robinson in their official capacities under Titles II and III of the ADA, Section 504 of the RA, the Eighth Amendment, and the Fourteenth Amendment. He also sues Defendants Herrington, Gibson, Payne, and Robinson in their individual capacities under the Eighth and Fourteenth Amendments.

### H. Supplying Information

Plaintiff states that Title II of the ADA requires HCDC as a public entity to supply "anyone any information pertaining to Title II requirements." According to Plaintiff, Defendants

6

HCDC, Herrington, and Gibson "do not and will not" supply the required information. As a result, according to Plaintiff, since 2014, he has "suffered from discrimination at the hands of HCDC and SHP employees, not knowing his rights as a disable person plaintiff has been subject to discrimination due to his disability for years not knowing how to seek any redress." Plaintiff states that during those years he has been "denied services, suffered personal injury, emotional distress undue hardship and pain and suffering due to Plaintiff not knowing his rights as a disable person."

As to this claim, Plaintiff sues Defendants HCDC, Herrington, and Gibson in their official capacities under Title II of the ADA, Section 504 of the RA, the Eighth Amendment, and the Fourteenth Amendment. He also sues Defendants Herrington and Gibson in their individual capacities under the Eighth and Fourteenth Amendments.

### I. ADA Grievance Procedures and Responsible Employee

Plaintiff states that HCDC has over 50 employees; thus, it is required to "adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any actions that would be prohibited by Title II ADA." According to Plaintiff, HCDC is also required to "designate an employee to oversee and adopt ADA Grievance procedures" and "make known the Name, Address, and telephone number of the designated Employee." Plaintiff states that HCDC is noncompliant with these requirements. As a direct result of HCDC's noncompliance, according to Plaintiff, he has continuously suffered since 2014.

As to this claim, Plaintiff sues Defendants HCDC, Herrington, and Gibson in their official capacities under Title II of the ADA for failure to comply with "ADA II 8.5000." He also sues Defendants Herrington and Gibson in their individual capacities under the Eighth Amendment and Fourteenth Amendment.

### J. Compliance Requirements

According to Plaintiff, Title II of the ADA and Section 504 of the RA require public entities to comply with certain procedures to avoid discrimination. Plaintiff states that these procedures include developing a Title II grievance procedure, designating an individual to oversee Title II compliance, developing a transition plan to achieve accessibility, and retaining a self-evaluation for three years. Plaintiff states that since HCDC was built with federal funds, has federal contracts, and houses federal inmates, it is required to "meet certain accessibility standards, to make reasonable modifications to policies, practices, and procedures when necessary to avoid discrimination . . . [and] adhere to certain operational guide Lines." Plaintiff contends that Defendant SHP is required to "adhere to ALL operational guidelines and Housing standards as set out in the [ADA] and Section 504 of the [RA]" since SHP requires Plaintiff to reside in "its Medical cells by classification due to his disability."

As to this claim, Plaintiff sues Defendants Robinson and Gibson in their official capacities under Titles II and III of the ADA and Section 504 of the RA. He also sues Defendants Robinson and Gibson in their individual capacities under the Eighth Amendment and Fourteenth Amendment.

### K. Previously Dismissed Claims

Plaintiff also seeks to amend claims that were raised in his original complaint and dismissed by this Court upon initial review of the complaint. *See* DN 16. Plaintiff states that he has discovered information during discovery of this action that provides a basis for these claims to continue.

### 1. Handicap Cell

According to Plaintiff, he learned during the discovery process that it is the policy of SHP and HCDC not to provide any handicap accessibility in their medical cells. As a result of this new knowledge, Plaintiff states that he now desires to bring a claim against Defendants Robinson and Gibson in their individual capacities under Titles II and III of the ADA and Section 504 of the RA for failure to provide Plaintiff with a handicapped cell.

### 2. Wheelchair

Plaintiff states that he brings a claim against Defendants Robinson, Miles, Lea, Gibson, and Henrietta[1] for "denying Plaintiff wheelchairs, giving him a wheelchair and taking it away without any authority to do so, causing injury on several occasions and using the chair to retaliate against Plaintiff." He states that these acts happened over a period of "A couple years." He says he complained to "all persons of authority at SHP and HCDC without effect." Plaintiff says it was "both SHP and HCDC's custom over a period of time to allow this behavior to go on continuously." Plaintiff states that he desires to bring official capacity claims against Defendants Robinson, Miles, Lea, Gibson, and Henrietta pursuant to Titles II and III of the ADA and Section 504 of the RA "for denying Plaintiff a wheelchair."

### 3. Shower Chair

Plaintiff states that in January and February 2016, he was in cell #524. According to Plaintiff, if he needed a shower chair during that time, he was not provided one. Instead, he was taken "up to the front of the Jail behind door 411 and its shower has a built in seat." He states that while in cell #524, Defendant Gibson "had the duty to provide Plaintiff with an adequate shower facility." He states that since that time, he learned that HCDC "does not provide shower

---

[1] Miles, Lea, and Henrietta were all first named as Defendants in Plaintiff's original complaint and identified as nurses employed by SHP.

9

chairs at all. Anyone needing a shower chair is taken up to the front of the Jail" to a shower that has a built in seat. Plaintiff further states that it is the policy of SHP "not to use shower chairs at all. Handicap persons have to shower in [cells] #525 or #411 shower chairs are not provided for any medical cell." Plaintiff states that it is Defendant Robinson's duty to provide Plaintiff with a shower chair or adequate shower facility.

As to this claim, Plaintiff sues Defendant Gibson in his official capacity pursuant to Title II of the ADA and Section 504 of the RA because "he had the duty to provide Plaintiff with an adequate shower facility." He further sues Defendant Robinson in her official capacity pursuant to Titles II and III of the ADA and Section 504 of the RA and in her individual capacity under the Eighth and Fourteenth Amendments.

### 4. Medical Treatment

#### a. Knee Pain

Plaintiff states that on January 19 or 20, 2016, he was in "A Medical Detox cell." He states that it was SHP policy to remove all personal items from inmates during detox. He further states that his wheelchair was removed during this time. Plaintiff states that it was SHP policy that inmates would have to appear at the door or panhole to receive their medications. Plaintiff states that "[o]n this occasion [he] injured himself (Right Knee) real bad. And Miles refused to treat [P]laintiff for it, also refusing to give [Plaintiff] his meds unless he came to the door. No one from SHP would treat [him]." Plaintiff states that it was SHP's "custom to ignore [his] complaints till a couple weeks later Dr. Davis finally gave Plaintiff an x-Ray and saw the injury and then ordered a CT scan." Plaintiff states that the two-week delay in treatment caused him "undue pain and emotional distress."

As to this claim, Plaintiff sues Defendant Miles in his official capacity under Titles II and III of the ADA and Section 504 of the RA.

### b. Open Wounds and Itching

Plaintiff states that he has an allergy to polyester and that he continuously itched causing him to have open wounds. Plaintiff asserts that it is SHP and HCDC policy "not to treat this or issue cotton uniforms." He states that as to this claim, he sues Defendants Robinson and Gibson in their official capacities pursuant to Titles II and III of the ADA and Section 504 of the RA.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 90 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)

(citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the district court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. LEGAL ANALYSIS

### A. Claims Pursuant to the RA and Title II of the ADA

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). Title II of the ADA prohibits a public entity from discriminating against disabled individuals and states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" is defined, in relevant part, as "any State or local government." 42 U.S.C. § 12131(1)(A). Section 504 of the RA protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified

programs or activities "solely by reason of her or his disability." 29 U.S.C. § 794(a). A "program or activity" includes the operations of "a department, agency, . . . or other instrumentality of a State or of a local government . . . ." 29 U.S.C. § 794(b)(1). The requirements for stating a claim under the RA are substantially similar to those under the ADA, but the RA specifically applies to programs or activities receiving federal financial assistance.

The Sixth Circuit has held that neither the ADA nor the RA permits public employees or supervisors to be sued in their individual capacities. *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("[N]either the ADA nor the RA impose[s] liability upon individuals."); *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) ("[N]either the ADA nor the RA allows suits against government officials in their individual capacity."). Consequently, Plaintiff's individual-capacity claims must be dismissed.

Accordingly, claims brought pursuant to the RA and Title II of the ADA against Defendants in their individual capacities will be dismissed from this action. The official-capacity claims under Title II of the ADA and the RA will be allowed to proceed.

### B. Claims Pursuant to Title III of the ADA

Title III of the ADA prohibits discrimination in places of public accommodation against persons with disabilities. 42 U.S.C. § 12182(a). Title III of the ADA defines "public accommodation" as follows:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce-
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire

13

and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a Laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7). Title III applies only to private entities operating public accommodations and services. It expressly does not apply to public entities such as cities, counties, and states or to the departments and agencies thereof. *See* 42 U.S.C. §§ 12131(1), 12181(6); *see also Watson v. Cobb*, No. 14-1034-JDT-egb, 2015 WL 502314, at *3 n.7 (W.D. Tenn. Feb. 5, 2015) (Title III "expressly does not apply to public entities such as cities, counties, and states or to the departments and agencies thereof."); *Collazo v. Corr. Corp. of Am.*, No. 4:11CV1424, 2011 WL

6012425, at *4 (N.D. Ohio Nov. 30, 2011) ("A jail or prison facility does not constitute a place of 'public accommodation' as defined in the applicable statutory provisions."); *Wattleton v. Doe*, No. 10-11969-JGD, 2010 WL 5283287, at *2 (D. Mass. Dec. 14, 2010) (concluding that federal prison does not constitute a place of public accommodation under Title III of ADA). Plaintiff complains about alleged discrimination in a county detention facility, an entity not covered by Title III.

Further, any claim under Title III of the ADA also is barred because only injunctive relief, relief Plaintiff has not sought in his third amended complaint, is available. *See Southwell v. Summit View of Farragut, LLC*, 494 F. App'x 508, 512 (6th Cir. 2012) ("Title III of the ADA provides only injunctive relief, not monetary damages to successful plaintiffs."); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages."); *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir. 1999) (recognizing that Title III enforcement statute, 42 U.S.C. § 12188, which incorporates the remedies of 42 U.S.C. § 2000a-3(a), does not include money damages); *Ajuluchuku v. Yum! Brand, Inc.*, No. 3:05CV826-H, 2006 WL 1523218, at *1 (W.D. Ky. May 23, 2006) ("[I]t is well established that Title III of the ADA does not provide for a private cause of action for damages.").

For these reasons, the claims brought under Title III of the ADA will be dismissed from this action.

### C. Jail Construction Claim

#### 1. Statute of Limitations

Plaintiff asserts a claim against Defendants HCDC, ARC, and Fosse & Associates regarding construction done to HCDC in 1996 and 2004. In Kentucky, § 1983 actions are

15

limited by the one-year statute of limitations found in Ky. Rev. Stat. § 413.140(1). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Additionally, claims under the ADA and the RA also are subject to Kentucky's one-year statute of limitations for personal injury actions. *See Lewis v. Fayette Cty. Det. Ctr.*, No. 99-5538, 2000 WL 556132, at *2 (6th Cir. Apr. 28, 2000) ("[C]ourts faced with ADA or Rehabilitation Act claims have also looked to the state's statute of limitations for personal injury actions."); *Wood v. Malony*, No. 4:07CV-90-M, 2009 WL 3806794, at *5 (W.D. Ky. Nov. 12, 2009) ("Any Title II claim is time barred because like the § 1983/*Bivens* constitutional claims, Kentucky's one-year statute of limitations for personal injury actions also applies to Title II ADA claims."). Plaintiff alleges that Defendant ARC was involved in the construction of HCDC back in 1996 and that Defendant Fosse & Associates was involved in the construction in 2004. The records of this Court reflect that Plaintiff was in a wheelchair and incarcerated at HCDC at least as far back as July 2014. *See McCormick v. Floyd*, No. 4:14-CV-82-JHM. The present action was not filed until February 18, 2016, well outside the applicable one-year statute of limitations.

Accordingly, Plaintiff's jail construction claims against Defendants HCDC, ARC, and Fosse & Associates are barred by the statute of limitations and will be dismissed**.**

### 2. Constitutional Claims

There is an additional reason that the constitutional claims must be dismissed against Defendants ARC and Fosse & Associates. In order to state a claim under § 1983, a plaintiff must allege both a violation of a right or rights secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Constitution does not apply to the conduct of private persons; it applies to conduct by the government. Conduct of private parties "lies beyond

16

the Constitution's scope in most instances, . . . [though] governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620 (1991). A private citizen is not liable for an alleged constitutional violation unless: (1) "the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority"; and (2) "the private party charged with the deprivation could be described in all fairness as a state actor." *Id.*

Here, as to the two construction companies, Defendants ARC and Fosse & Associates, nothing in Plaintiff's third amended complaint alleges or shows that these Defendants are state actors, *i.e.*, acted under color of state law. Therefore, the constitutional claim regarding the jail construction will also be dismissed on this basis.

### D. Remaining Constitutional Claims

Plaintiff alleges violations of the Eighth Amendment and Fourteenth Amendment. Plaintiff was not a convicted prisoner at the time of the events alleged; he was a pretrial detainee. As such, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to him. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) ("The Eighth Amendment does not apply to pretrial detainees."). "The Due Process Clause of the Fourteenth Amendment extends the protection of the Eighth Amendment to pretrial detainees such as Plaintiff." *Harrell v. Grainger Cty., Tenn.*, 391 F. App'x 519, 522 (6th Cir. 2010); *see also Watkins v. City of Battle Creek*, 273 F.3d at 685-86 ("Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners."). Thus, the Plaintiff's Eighth Amendment claims must be analyzed under the Fourteenth Amendment.

The Court will allow the remaining constitutional claims to continue under the Fourteenth Amendment.

## IV. ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1)  The claims under the RA and Title II of the ADA against Defendants in their individual capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2)  The claims under Title III of the ADA are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(3)  The claims against Defendants ARC and Fosse & Associates are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for being frivolous[2] and for failure to state a claim upon which relief may be granted ;

(4)  The jail construction claim against HCDC is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for being frivolous; and

(5)  There being no remaining claims against them, Defendants ARC and Fosse & Associates are **DISMISSED** from this action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court** is **DIRECTED** to remove Defendants ARC and Fosse & Associates from the docket of this action.

---

[2] The Sixth Circuit has indicated that claims barred by the statute of limitations are frivolous. *See Dellis v. Corr. Corp. of Am.*, 257 F. 3d 508, 511 (6th Cir. 2001).

**IT IS FURTHER ORDERED** that the remaining claims and Defendants as set forth in the Summary of Claims section above will proceed.

Date: April 19, 2017

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Counsel of record for Defendants HCDC, Gibson, Robinson, Miles, Lea & Henrietta
Defendants SHP, Wiess, Buckman, Parrish, Davis, Herrington, & Payne
4414.003