UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:16-CV-00017-JHM

DAMON McCORMICK                                                                PLAINTIFF

V.

HENDERSON COUNTY DETENTION CENTER, et al.                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on HCDC Defendants' Renewed Motion for Summary Judgment [DN 229], SHP Defendants' Motion for Summary Judgment [DN 233], and HCDC Defendants' Supplemental Motion for Summary Judgment [DN 241]. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

Plaintiff Damon McCormick is a prisoner at the Henderson County Detention Center ("HCDC"). He has filed this lawsuit against HCDC, Southern Health Partners, Inc. ("SHP")—the company that provides medical services at HCDC—and employees of both entities for the alleged wrongs he experienced while incarcerated. McCormick states that he is disabled because he is wheelchair-bound, legally blind, and suffers from psychiatric disorders, seizures, acid reflux, and an allergy to polyester. According to his most recent Amended Complaint [DN 208], Defendants violated his constitutional rights in the following ways: failing to provide an adequate wheelchair or shower chair, removing his wheelchair, refusing to administer medicine, not providing him with a Torah, and preventing him from offering assistance to other inmates filing grievances. McCormick also alleges that Defendants are liable for failure to train and supervise, negligence, gross negligence, professional negligence, assault and battery, intentional infliction of emotional

distress, and failure to adhere to the Americans with Disabilities Act requirements. HCDC Defendants and SHP Defendants request summary judgment on all claims against them.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Claims under 42 U.S.C. § 1983

In the first two counts of his Amended Complaint, McCormick suggests that Defendants are responsible for a variety of constitutional violations committed against him during his

imprisonment at HCDC. 42 U.S.C. § 1983 gives a private right of action to individuals who suffer the violation of a Constitutional right that was committed "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Color of state law" undoubtedly applies to the work of HCDC employees at the prison. Additionally, although SHP is a private entity, its employees act under color of state law while working at HCDC. *See Hicks v. Frey*, F.2d 1450, 1458 (6th Cir. 1993) (citing *West*, 487 U.S. at 54) ("[A] private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'")).

### 1. Deliberate Indifference to Medical Needs

In the first two counts of his Complaint, McCormick alleges that Defendants have violated his constitutional rights by being "repeatedly unresponsive to the obvious medical needs of the Plaintiff, and repeatedly failed to secure for him necessary and recommended medical treatment resulting in a denial of medical care to Plaintiff as an inmate." (Compl. ¶¶ 56 & 64.)

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). For example, under the Eighth Amendment, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). If these needs are not met, "such failure may actually produce physical 'torture or a lingering death.'" *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *In re Kemmler*, 136 U.S. 436, 447 (1890)). For this reason, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" and is actionable under § 1983. *Id.* at 104 (internal citations omitted).

Two elements are necessary for a claim of deliberate indifference to medical needs:

> [A] plaintiff must satisfy an objective component and a subjective component. The objective component is satisfied by showing a sufficiently serious condition that denial of needed medical care would result in the unnecessary and wanton infliction of pain or pose a substantial risk of serious harm. To satisfy the subjective component, a plaintiff must allege and ultimately prove that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if needed care were not provided, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk.

*Amick v. Ohio Dep. of Rehab. & Corr.*, 521 F. App'x 354, 358 (6th Cir. 2013) (internal citations omitted).

### a. Denial of Medical Equipment

First, McCormick complains that "Defendants HCDC and SHP provided Plaintiff a wheelchair that was not suitable for safe use." (Compl. ¶ 24.) Specifically, McCormick alleges that his weight greatly exceeded the maximum capacity of the wheelchair. Both parties have produced records of numerous grievances filed by McCormick pertaining to his allegedly inadequate wheelchair. According to McCormick, his request to allow him use of his home wheelchair was denied. As a result, McCormick claims that he was injured on multiple occasions when the arm of his wheelchair gave out.

Defendants insist that they gave McCormick the largest wheelchair available at HCDC. In addition, HCDC records show that McCormick was allowed to have a wheelchair brought in from his house. When McCormick's home wheelchair was brought to HCDC, it was broken and there was smokeless tobacco and a syringe hidden within it. Furthermore, the wheelchair provided to McCormick was inspected by HCDC maintenance each time McCormick complained that it was broken. HCDC Maintenance never found anything to be wrong with the wheelchair and McCormick has provided no support for his claim that it "was not suitable for safe use." (Compl. ¶ 24.)

In addition, on several occasions, McCormick had his wheelchair removed from his cell. McCormick alleges that it is HCDC and SHP policy to remove medical devices such as wheelchairs "as a form of punishment" for inmates. (*Id.* ¶ 29.) Defendants concede that McCormick's wheelchair was removed from his cell but only after medical personnel became concerned that McCormick was using his wheelchair in a dangerous manner. Multiple reports indicate that McCormick engaged in unsafe use of his wheelchair by leaning back and "popping wheelies." (Mem. in Support of HCDC Defs.' Renewed Mot. for Summ. J. [DN 299-31] at 5). McCormick denies that he was "popping wheelies" but admits that he did lean back in the chair as that was the only position from which he could see the television from his cell. During the time when McCormick did not have access to a wheelchair in his cell, he had to "scoot on his behind" to get around his cell. (Compl. ¶ 15.) However, he was still provided a wheelchair when he left his cell.

Even viewing all evidence in a light most favorable to McCormick, the Court does not find that Defendants were deliberately indifferent to McCormick's need for an adequate wheelchair. McCormick offered no evidence that the wheelchair provided to him by HCDC was inadequate. The fact that the arm of the wheelchair may have given out does not make Defendants liable for McCormick's injury. Rather, the testimony indicates McCormick was given the largest chair available at the prison and was given the opportunity for his family to bring him a wheelchair from home.

Furthermore, even if it is true that McCormick's wheelchair was removed from his cell, he still does not make a cognizable claim under § 1983. Prison officials may confiscate property from inmates "in order to maintain security and to prevent health and fire hazards." *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 at *1 (6th Cir. Nov. 8, 1985). Furthermore, "a prison doctor remains

free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997). Although it may have been inconvenient for McCormick to scoot around his cell, his wheelchair was taken away because, as McCormick has admitted, he was leaning back in the chair which prison officials viewed as a hazard to his safety. Progress notes submitted by Defendants support their contention that "Plaintiff had been advised multiple times to refrain from [popping wheelies] because he could injure himself." (Mem. in Support of HCDC Defs.' Renewed Mot. for Summ. J. at 5). Therefore, Defendants were being attentive to McCormick's wellbeing when they confiscated his wheelchair out of fear that he would injure himself. For these reasons, summary judgment is **GRANTED** to Defendants on Plaintiff's § 1983 claim related to his wheelchair.

Additionally, McCormick contends that he "repeatedly requested Defendants Gibson and Robinson provide him use of a chair to use while taking a shower." (Compl. ¶ 19.) He alleges that his request was denied and, as a result, he fell and injured his left knee while showering. However, the evidence within the record indicates that McCormick was provided suitable handicapped showers whenever requested. McCormick admits that on the occasion when he was denied use of handicapped shower for two nights, "Defendant Lt. Ryan responded that the problem was fixed and Plaintiff would be permitted to use handicap accessible showers." (Resp. to HCDC's Renewed Mot. for Summ. J. [DN 238] at 3.) Even when viewed in the light most favorable to McCormick, the record shows that Defendants were not deliberately indifferent but, to the contrary, promptly took action so that McCormick could have access to a handicapped shower. For this reason, summary judgment is **GRANTED** to Defendants regarding Plaintiff's complaints about Defendants' refusal to provide a shower chair.

### b. Seizures

Furthermore, McCormick claims that he "has suffered numerous seizures while in custody at HCDC." (Compl. ¶ 21.) He contends that Defendant Davis, citing the policies of HCDC and SHP, refused to provide him with seizure medication. McCormick alleges that he sustained an injury to his right shoulder after suffering a seizure. McCormick also claims that he urinated on himself while experiencing two seizures and Defendants Parrish and Buckman denied him immediate access to a shower based on HCDC policy that inmates in isolation could only shower during third shift.

HCDC Defendants suspect that McCormick faked his seizures. According to multiple affidavits, HCDC officers observed McCormick banging on his cell door with his hand and then laying down on the floor when they opened the door. In addition, concerning the allegations that McCormick urinated on himself while experiencing seizures, HCDC officers state that McCormick was seen on camera walking to his cell door and urinating on the door while laughing and cursing at HCDC staff. Still, HCDC contends that after each time McCormick purported to have a seizure, he was examined immediately by medical staff.

In his Response, Plaintiff argues that regardless of whether his seizures were genuine, Defendants should be liable because they refused him medication for his seizures despite being aware that he had a history of seizures. Evidence within the record proves that McCormick was transferred to Roederer Correctional Complex in February 2016 because of a history of seizures and Defendant Davis prescribed McCormick Neurontin, an anti-seizure medication. Because Defendants recognize that McCormick suffers from seizures, McCormick argues that Defendants' refusal to administer seizure medications amounts to deliberate indifference to a serious medical

need. Defendants reply, arguing that their prompt responses to Plaintiff's request for seizure medication indicate that they were not deliberately indifferent.

The Court declines to grant summary judgment to Defendant Davis on the issue of seizure medicine. According to documentation, Defendant Davis must have been aware that Plaintiff suffered from seizures as she previously prescribed him Neurotonin and cited McCormick's history of seizures as cause for his transfer to Roederer in 2016. Therefore, a reasonable jury may find her insistence that McCormick did not suffer from seizures and her refusing to provide him the necessary medication to be deliberately indifferent to that need.

Additionally, Defendant Davis' liability may also extend to her employer. SHP may be liable notwithstanding the doctrine of municipal liability which limits claims under § 1983 that can be brought against certain entities. The Supreme Court has long held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. New York City Dep.'t of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, "[i]n order to hold a local entity liable for injuries under § 1983, a plaintiff must show that his injuries were the result of some 'policy or custom' attributable to the government entity that contributed to Plaintiff's constitutional violation." *Taylor v. Franklin County*, 104 Fed. Appx. 531, 542 (citing *Monell*, 436 U.S. at 692). This municipal liability doctrine also extends to private corporations such as SHP. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). McCormick alleges that failing to provide his seizure medication was "a result of the policies, procedures, procedures, customs, and practices of Defendant SHP." (Compl. ¶ 64). Therefore, SHP may be subject to liability and not protected by municipal liability. In conclusion, as to McCormick's claim under § 1983 for failure to provide seizure medication, summary judgment is **DENIED** to SHP Defendants in Count

II. However, since there has been no allegation that HCDC or its employees were responsible for withholding seizure medication, summary judgment is **GRANTED** on Count I.

### c. Polyester Allergy

McCormick also experienced complications because he is allegedly allergic to polyester, the material that comprises HCDC uniforms. He complains that even though "Defendant SHP has policies and procedures in place for inmates that are allergic to polyester[,] Defendants Robinson, Gibson, and Humphrey refused to administer antihistamines or offer Plaintiff a uniform that does not contain polyester." (Compl. ¶ 31.) "Plaintiff's allergy to polyester causes itchiness, which in turn leads Plaintiff to scratch himself, often to the point open wounds develop." (*Id*. ¶ 30.) Defendants deny that McCormick is allergic to polyester and instead claim that his itching and open wounds are symptoms of withdrawal. For this reason, they prescribed him tapering doses of Vistaril when he arrived at HCDC to help with his withdrawal symptoms but did not think that further medication was necessary. In addition, medical notes provided by Defendants show that McCormick was offered Benadryl and hydrocortisone cream to help relieve his symptoms but McCormick refused both.

Within his Response to the Motion for Summary Judgment, McCormick states, "Plaintiff denies having been offered Benadryl and / or hydrocortisone by medical staff." (Resp. to HCDC at 4−5.) Further, McCormick argues

> [S]upposing Defendant is accurate that Plaintiff was in fact suffering from withdrawal symptoms, Plaintiff was suffering from a condition that could have had serious consequences. Detoxing from alcohol or Xanax could be potentially fatal if not closely monitored. Detoxing from opioids can be extremely painful as well. In light of those concerns, admittedly held by Defendants in their Motion, Defendants' failure to act for ten (10) days exhibited a "sufficiently culpable state of mind" to establish deliberate indifference.

(Resp. to SHP's Mot. for Summ. J. [DN 239] at 5−6).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A court generally will not find deliberate indifference when some level of medical care was offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413−14 (D.N.J. 2002). Additionally, mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996). Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate-indifference claim. *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *2 (6th Cir. Oct. 29, 1996).

This Court will not second guess the decisions made by medical personnel. According to the evidence, McCormick was seen by SHP about his itching, whether it was due to an allergy or withdrawals, within three days of McCormick's first complaint. Two days later, McCormick was given a tapering dose of Vistaril after SHP staff suspected that he was experiencing symptoms of withdrawal. According to the evidence, Defendants treated McCormick according to their medical judgment of his perceived diagnosis. For this reason, summary judgment is **GRANTED** to Defendants on McCormick's claim regarding his polyester allergy.

### 3. First Amendment Violations

Within the Facts section of the Complaint, McCormick alleges that HCDC Defendants violated his First Amendment rights in two ways. First, McCormick states, "Unknown Defendants did not allow Plaintiff to have his Torah despite Plaintiff's request." (Compl. ¶ 45.) Second, "Defendants Gibson, Brady, and HCDC violated Plaintiff's First Amendment right to freedom of speech by their refusal to allow Plaintiff to assist inmates in their filing of grievances." (*Id.* ¶ 49.)

Allegedly, McCormick was moved to isolation for inciting a riot by assisting other inmates in filing complaints against the jail. Although the HCDC Defendants did not discuss a basis for the dismissal of McCormick's First Amendment claims within their Renewed Motion for Summary Judgment, after becoming aware of this oversight, the HCDC Defendants submitted a Supplemental Motion for Summary Judgment [DN 241] to address McCormick's First Amendment claims. In its Supplement, the HCDC Defendants argue that McCormick fails to allege a First Amendment violation.

The HCDC Defendants are correct that McCormick does not adequately claim that they violated his religious freedoms. First, the HCDC Defendants submit evidence to refute McCormick's claim that "Plaintiff was in possession of a Torah when he was booked into HCDC on or about January 17, 2017." (Compl. ¶ 45.) Property Intake Forms submitted by HCDC show that McCormick did not have a Torah when he was booked. McCormick offers no evidence to contradict this other than unverified statements within his Amendment Complaint. Furthermore, McCormick's requests for a Torah were responded to in a timely fashion, as HCDC staff members informed McCormick that he could request a Torah and that one was ordered for him. Therefore, summary judgment on McCormick's claims based on Defendants' alleged withholding of a Torah is **GRANTED** to Defendants.

McCormick also does not have a recognizable claim under § 1983 in complaining that he was denied his freedom of speech when HCDC Defendants put him into solitary confinement to prevent him from assisting other inmates in filing grievances. In *Turner v. Saffey*, the Supreme Court established four factors to weigh in situations when decisions by prison personnel impact an inmates' First Amendment rights:

> (1) A valid, rational connection between the regulation and a legitimate, justifying governmental interest; (2) Whether prison inmates retain alternative means of

exercising the right affected by the regulation; (3) How accommodation of the right would affect guards, inmates, and the allocation of prison resources; and (4) Whether ready alternatives are not available.

*El-Amin v. Tirey*, 817 F. Supp. 694, 699 (W.D. Tenn. 1993) (citing *Turner v. Saffey*, 482 U.S. 78, 89−90 (1987)).

Lieutenant Megan McElfresh submitted an affidavit in which she describes the circumstances surrounding the decision to move McCormick to solitary confinement. Lieutenant McElfresh and other employees of HCDC insist that McCormick filed an inordinate amount of grievances while at HCDC as a means to harass prison officials. Then, when McCormick was moved into a cell with other prisoners, the inmates housed with McCormick also began filing gratuitous grievances although their conditions had not changed. According to Lieutenant McElfresh, this increase in grievances "interfered with [her] ability to implement HCDC's grievance procedure as well as its overall order and security." (Aff. of Megan McElfresh [DN 241-5] at 2.)

After considering these facts, the Court concludes that moving McCormick to solitary confinement was reasonable in light of the factors from *Turner*. The removal of McCormick from his cell was due to the rational prison interest in maintaining the integrity of the grievance system. Moreover, the Sixth Circuit has affirmed that an inmate "has no First Amendment right to represent other inmates in presenting their grievances absent a showing that the inmates receiving the assistance would otherwise be unable to pursue legal redress." *Vandiver v. Martin*, 48 Fed. App'x 517, 519 (6th Cir. 2002). McCormick has made no such showing. For these reasons, HCDC Defendants' Supplemental Motion for Summary Judgment is **GRANTED**.

## B. Failure to Train and Supervise

In Counts III and IV, McCormick alleges that Defendants are responsible for failure to properly train and supervise their employees regarding providing proper medical care to inmates in custody. The HCDC Defendants argue that this claim should dismissed because McCormick failed to prove that HCDC staff members were deliberately indifferent. SHP Defendants assert the claim should be dismissed because "Plaintiff failed to disclosure any qualified experts to provide opinions in that regard, failed to prove any harm or Constitutional deprivation was actually sustained by Plaintiff (or the cause of that harm or Constitutional deprivation), and utterly failed to produce sufficient evidence to support his allegation against the medical Defendants." (SHP Defs.' Mem. in Support of Mot. for Summ. J. [DN 233-1] at 16.) McCormick does not defend his failure to train and supervise claims within his responses to either of the motions for summary judgment.

> To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.

*Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992). Here, McCormick offers no evidence to survive summary judgment. The record is entirely devoid of any indication that the training and supervision HCDC and SHP provided to their employees was inadequate. In fact, there is nothing whatsoever in the record about the HCDC or SHP's employee training or supervision. Thus, Defendants are entitled to judgment as a matter of law and summary judgment is **GRANTED** to Defendants on Counts III and IV.

### C. Negligence, Gross Negligence, and Professional Negligence

In Count V, McCormick brings claims of negligence, gross negligence, and professional negligence. In order to establish a claim for negligence, a plaintiff must show "a duty on the defendant, a breach of the duty, and a causal connection between the breach of the duty and an injury suffered by the plaintiff." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 437 (Ky. App. 2001).

The Defendant's complain that McCormick has failed to proffer any expert testimony on causation and thus, he cannot establish any link between his injuries and the alleged negligence of Defendants. Negligence "must be established by medical or expert testimony unless the negligence and injurious results are so apparent that laymen with a general knowledge would have no difficulty in recognizing it." *Johnson v. Vaughn*, 370 S.W.2d 591, 596 (Ky. 1963). According to his Complaint, McCormick suffered an injury to his right shoulder as a result of a seizure when he was not provided proper medication. Further, as discussed above, the evidence indicates that Defendant Davis was aware of McCormick's history of seizures. Viewing the evidence in a light most favorable to McCormick, a reasonable jury might find that Defendant Davis and her employer, Defendant SHP, acted negligently in failing to provide seizure medication, and such failure caused his injury. The Court will allow this claim to survive summary judgment and re-evaluate its sufficiency at trial as it applies to the SHP Defendants. Therefore, summary judgment is **DENIED** on Count V as to the SHP Defendants. However, because no accusations of negligence have been made against HCDC or its employees, summary judgment is **GRANTED** to HCDC Defendants.

### D. Assault and Battery

In Count VI, McCormick alleges that "Defendants Parrish, Buckman, Payne, and Unknown Defendants, intentionally, and maliciously, and in bad faith applied and threatened to apply

unlawful and unnecessary force against Plaintiff by physically restraining and administering pepper spray on the Plaintiff causing severe pain and suffering." (Compl. ¶ 87.) HCDC Defendants' Renewed Motion for Summary Judgment and Plaintiff's Response [DN 238] provide more details, explaining that this claim is based on three instances when HCDC officers pepper sprayed McCormick.

The first instance occurred on October 1, 2016 when McCormick became upset during medication distribution. Defendants allege, through the affidavit of Defendant Parrish [DN 229-20] and an Incident Report from the day in question [DN 229-19], that McCormick grabbed the pan hole of his cell to prevent medical staff from closing it and threw a cup of water at medical staff. Defendant Parrish claims that he administered a one-second pepper spray blast to subdue McCormick. McCormick denies that he grabbed the pan hole of his cell or threw a cup of water. Instead, McCormick states that he was upset with staff members and spoke to them through the pan-hole door when the door was slammed in his face, breaking his glasses. McCormick claims that this upset him and so he began to shout. As a result, McCormick alleges that four HCDC employees entered and doused him with pepper spray.

Then, on January 12, 2017, McCormick was pepper sprayed again. As Defendants established through Defendant Payne's affidavit [DN 243-1] and an Incident Report [DN 229-22], Payne administered a one-second pepper spray blast to McCormick when McCormick continued yelling and cursing at another inmate despite several instructions to stop. McCormick claims that he was pepper sprayed at the instruction of Defendant Gibson after Gibson and McCormick were involved in a verbal altercation. Even after he was pepper sprayed, Defendants allege that McCormick continued yelling at HCDC inmates and staff so that he had to be placed in a restraint chair. Documentation indicates that while restrained, McCormick had water dripping on him from

an overhead awning and was shivering. For this reason, less than 15 minutes later, he was moved inside.

The very next day, on January 13, 2017, McCormick was pepper sprayed again when he was causing a disturbance in his unit by yelling and cursing once again. Officer Cook described the events in his affidavit [DN 229-25] and Incident Report [DN 229-24]. Allegedly, McCormick was yelling and cursing "to the point where other inmates sharing a cell with him became angry and acting violently as well." (Cook Aff. [DN 229-25] ¶ 4). As a result, Officer Cook delivered a one-second burst of pepper spray that hit McCormick in the side of the face. McCormick denies that he was inciting a riot or acting violently.

Here, each party tells a different story of what occurred in the pepper spraying scenarios. The HCDC officers claim to have used a reasonable amount of force in scenarios where they were justified in subduing McCormick. However, McCormick, through his Verified Response, disputes this and describing a scene that may convince a jury that the officers were not justified in using such force. For this reason, there is a dispute of material fact and summary judgment is precluded.

Also relevant to this inquiry is the question of immunity. "'Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary function." *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). This immunity is absolute when a public officer is sued in his or her official capacity. *Id*. "When sued in their individual capacity, public officers are protected by qualified immunity for negligent performance of: (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Estate of Brackens v. Louisville Jefferson Cnty. Metro Gov't*, 680 Fed. App'x 362, 368 (6th Cir. 2017) (quoting *T.S. v. Doe*, 742 F.3d 632, 641 (6th Cir. 2014); *Yanero*,

65 S.W.3d at 522) (internal quotation marks omitted). Qualified immunity "would be defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal punctuation omitted). In this case, there is a dispute of fact based on McCormick's Verified Response concerning Defendants Parrish, Buckman, Payne, and Unknown HCDC Defendants, and therefore, they are not entitled to immunity. Thus, summary judgment is **DENIED** on Count VI.

### E. Intentional Infliction of Emotional Distress

In seeking to dismiss McCormick's claim of intentional infliction of emotional distress (outrage) in Count VII, HCDC Defendants correctly note that prisoners are not permitted to bring a claim for emotional injury suffered while in custody "without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). In describing the facts that lead to intentional infliction of emotional distress, McCormick describes two situations in which his property was confiscated from him by HCDC employees. He claims his things were taken "in an effort to harass, annoy, and caused Plaintiff emotional distress." (Compl. ¶¶ 35 & 38). The evidence contains no allegations that McCormick suffered any physical injury from these acts. For this reason, his claim must be dismissed. See *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Summary judgment is **GRANTED** to Defendants on Count VII.

### F. Failure to Adhere to Requirements of ADA

Lastly, McCormick asserts that HCDC Defendants breached their duty to adhere to the requirements of the Americans with Disabilities Act ("ADA"). In the Facts section of his Amended Complaint, McCormick alleges that HCDC Defendants are "non-compliant with the

dictates of the ADA." (Compl. ¶ 52.) Specifically, McCormick states that HCDC failed to designate an employee to oversee and adopt ADA grievance procedures and make that designee known. He also alleges that HCDC failed to adopt and publish grievance procedures and provide public notice about relevant provisions of the ADA.

In their Renewed Motion for Summary Judgment, the HCDC Defendants argue that they do satisfy the ADA's requirements. According to the Motion, HCDC has "a written grievance procedure in place for inmates to submit complaints, including complaints of alleged ADA violations, which is distributed to each inmate and posted in a conspicuous place in HCDC's booking area." (Mem. in Support of HCDC Defs.' Mot for Summ. J. at 18.) Further, "Plaintiff, as well as any other inmate, were provided ADA informational materials upon request." (*Id.*) HCDC Defendants included HCDC's grievance procedure as an exhibit to their Renewed Motion for Summary Judgment (*See* DN 229-30). In his Response to the Renewed Motion, McCormick did not defend his claim of ADA non-compliance or offer any evidence to contradict HCDC's assertion. Because no reasonable jury could find that Defendants violated the ADA, summary judgment is **GRANTED** to the Defendants on Count VIII.

### IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1) Summary judgment is **GRANTED** on Count I;

2) Summary judgment is **DENIED** on Count II;

3) Summary judgment is **GRANTED** on Count III;

4) Summary judgment is **GRANTED** on Count IV;

5) Summary judgment is **GRANTED** to the HCDC Defendants on Count V, but **DENIED** as to the SHP Defendants;

6) Summary judgment is **DENIED** on Count VI;

7) Summary judgment is **GRANTED** on Count VII, and;

8) Summary judgment is **GRANTED** on Count VIII.

Joseph H. McKinley Jr., District Judge
United States District Court

January 29, 2019

cc: counsel of record